UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA


CHARLIE BALL (#459919)

VERSUS                                          CIVIL ACTION

JOHN SANDERS, ET AL                             NUMBER 13-282-JJB-SCR

## NOTICE

    Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the U. S. District Court.

    In accordance with 28 U.S.C. § 636(b)(1), you have 14 days after being served with the attached report to file written objections to the proposed findings of fact, conclusions of law, and recommendations set forth therein.  Failure to file written objections to the proposed findings, conclusions and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

    ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

    Baton Rouge, Louisiana, June 2, 2014.

                                        /s/ Stephen C. Riedlinger
                                        STEPHEN C. RIEDLINGER
                                        UNITED STATES MAGISTRATE JUDGE

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA


CHARLIE BALL (#459919)

VERSUS                                          CIVIL ACTION

JOHN SANDERS, ET AL                             NUMBER 13-282-JJB-SCR


**MAGISTRATE JUDGE'S REPORT**

Before the court is the Defense Motion for Summary Judgment. Record document number 69. The motion is opposed.[1]

Pro se plaintiff, an inmate confined at Louisiana State Penitentiary, Angola, Louisiana, filed this action pursuant to 42 U.S.C. § 1983 against Capt. John Sanders, Lt. Randall Stead, Msgt. Kevin Normand[2] and Cadet Bryson Robinson. Plaintiff alleged that he was subjected to a visual body cavity search without probable cause and an excessive use of force in violation of his Fourth and Eighth Amendment rights.

Defendants moved for summary judgment relying on a Statement of Undisputed Facts, the affidavits of Capt. Sanders, Lt. Stead, Msgt. Normand and Cadet Robinson, a copies of Penitentiary Directive Nos. 09.003 and 09.002, a copy of a disciplinary report

---

[1] Record document number 70.

[2] The defendant was identified as Kevin Norman in the complaint.

issued to the plaintiff on January 15, 2013, copies of Warden Unusual Occurrence Reports, ARP statements, the Camp J Gas logs, ARP statements by Msgt. Normand, the plaintiff's medical records, and the defendants' discovery responses.

## I. Factual Allegations

Plaintiff alleged that on January 15, 2013, Capt. Sanders and Cadet Robinson spoke with another inmate on the tier and Capt. Sanders threatened to spray that inmate with a chemical agent if he continued to misbehave. Plaintiff alleged that he began laughing and Capt. Sanders warned that he would "get gassed too." Plaintiff alleged that he responded that he could laugh at whatever he wanted to laugh at and Capt. Sanders replied "we'll see if you'll be laughing when you get gassed." Plaintiff alleged that nurse Tequila Parker, Msgt. Normand and Cadet Robinson witnessed his verbal exchange with Capt. Sanders.

Plaintiff alleged that a short time later Capt. Sanders, Lt. Stead and Cadet Robinson made rounds on the tier and then returned to his cell. Plaintiff alleged that Lt. Stead ordered him to remove his clothing for a visual search. Plaintiff alleged that after removing his clothing he was ordered to turn around and spread his buttocks. Plaintiff alleged that Capt. Sanders told him that if he failed to comply with the order he would be sprayed with a chemical agent. Plaintiff alleged that he responded to Capt. Sanders with an expletive, "f___ you."

Plaintiff alleged that Capt. Sanders left the unit and when he returned he stuck a can of mace through the cell bars and ordered the plaintiff to come to the cell bars. Plaintiff alleged that when he came to the bars Capt. Sanders sprayed him twice with mace and then went into the pipe chase and sprayed mace through the vent.

Plaintiff alleged that approximately 15 minutes later he was restrained and removed from his cell. Plaintiff alleged that while being escorted to administrative segregation Capt. Sanders and Lt. Stead punched and slapped his back, head, neck and stomach. Plaintiff alleged that he dropped his asthma inhaler and Lt. Stead picked it up and sprayed the inhaler four or five times and asked the plaintiff if he was better. Plaintiff alleged that Capt. Sanders punched him on the back three times and told him to take a deep breath. Plaintiff alleged that Msgt. Normand, Lt. Stead and Cadet Robinson observed Capt. Sanders spray him with mace without provocation and did nothing to intervene on his behalf.

## II. Applicable Law and Analysis

### A. Summary Judgment Standard

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Rule 56, Fed.R.Civ.P. Supporting affidavits must set forth facts which would be admissible in evidence. Opposing responses must set forth specific facts showing

that there is a genuine issue for trial. Rule 56(c). Speculation, unsupported assertions, and conclusory allegations are inadequate to defeat a motion for summary judgment. *Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 660 (5th Cir. 2012). The court need only consider cited materials, but it may consider other materials in the record. Rule 56(c)(1)(3).

**B. Qualified Immunity**

Defendants argued that they are entitled to qualified immunity because their conduct did not violate any of the plaintiff's clearly established constitutional or statutory rights of which a reasonable person would have known.

A state official sued in his individual capacity for damages may assert a qualified immunity defense. *Procunier v. Navarette*, 434 U.S. 555, 561, 98 S.Ct. 855, 859 (1978). This immunity is defeated if the official violated clearly established statutory or constitutional rights, of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738 (1982). In assessing the applicability of a qualified immunity defense, the court must first determine whether the plaintiff has asserted a violation of a clearly established right at all. *Siegert v. Gilley*, 500 U.S. 226, 111 S.Ct. 1789 (1991). If the court determines that there was a violation of a right secured by the Constitution, then it must determine whether the defendant could have reasonably thought his actions were consistent

4

with the rights he is alleged to have violated. *Anderson v. Creighton*, 483 U.S. 635, 638, 107 S.Ct. 3034, 3038 (1987). The protections afforded by the qualified immunity defense turn on the "objective legal reasonableness" of the defendant's conduct examined by reference to clearly established law. *Id.*, at 639, 107 S.Ct. at 3038. The court does not ascertain solely whether the law was settled at the time of the defendant's conduct, but rather, when measured by an objective standard, a reasonable officer would have known that his conduct was illegal. Even if a defendant's conduct actually violates a plaintiff's constitutional right, the defendant is entitled to qualified immunity if the conduct was objectively reasonable. *Duckett v. City of Cedar Park, Texas*, 950 F.2d 272 (5th Cir. 1992), *citing Pfannstiel v. City of Marion*, 918 F.2d 1178, 1183 (5th Cir. 1990); *Melear v. Spears*, 862 F.2d 1177 (5th Cir. 1989); *Matherne v. Wilson*, 851 F.2d 752 (5th Cir. 1988).

### C. Visual Body Cavity Search

Plaintiff alleged that he was subjected to a visual body cavity search without probable cause in violation of the Fourth Amendment.

The purpose of searches in the prison context is to intercept contraband. *See Bell v. Wolfish*, 441 U.S. 520, 99 S.Ct. 1861 (1979); Hudson *v. Palmer*, 468 U.S. 517, 104 S.Ct. 3194 (1984).

Under appropriate circumstances, visual body cavity searches

of prisoners can be constitutionally reasonable. *See Bell v. Wolfish*, 441 U.S. at 558, 99 S.Ct. at 1884. The test of reasonableness under the Fourth Amendment is not capable of precise or mechanical application. *Id.*, at 559, 99 S.Ct. at 1884. It requires a balancing of the need for the particular intrusion, the manner in which it was conducted, the justification for initiating it, and the place in which it was conducted. *Id*. Administrative officials are not obliged to adopt the least restrictive means to meet their legitimate objectives. *Block v. Rutherford*, 468 U.S. 576, 591, n. 11, 104 S.Ct. 3227, 3235, n. 11 (1984); *Hay v. Waldron*, 834 F.2d 481 (5th Cir. 1987).

Under the Fourth Amendment, "searches or seizures conducted on prisoners must be reasonable under all the facts and circumstances in which they are performed." *Elliott v. Lynn*, 38 F.3d 188, 190-91 (5th Cir. 1994) (internal quotation and citation omitted). Because a prison administrator's decisions and actions in the prison context are entitled to great deference from the courts, the burden of proving reasonableness is a light burden. *Id*. at 191.

The summary judgment evidence showed that during a general search an inmate is required to remove his clothing down to his underwear and is visually observed.[3] A strip search involves a visual inspection of a nude inmate who may be required to bend

---

[3] Record document number 69-3, Exhibit A, Penitentiary Directive No. 09.003, Page 2 of 6, ¶ c.

over, squat, turn around, raise his arms, and lift his genitals.[4] A visual body cavity search involves the same characteristics as a strip search with the addition of a visual search of the anal opening whereby an inmate is required to spread his buttocks.[5] A visual body cavity search may be conducted routinely, without a showing of reasonable suspicion and special documentation, including after unescorted contact with general population offenders by an offender in segregation.[6]

It is undisputed that at the time of the alleged incident the plaintiff was confined to Camp J, a segregation unit.[7] The summary judgment evidence showed that before the visual body cavity search was conducted, inmate orderlies assigned to the general population were on the tier to serve meals and clean the tier.[8] The summary judgment evidence showed that inmate orderlies have smuggled contraband to offenders in segregated areas such as Camp J.[9]

The summary judgment evidence showed that the visual body cavity search took place while the plaintiff was confined in a

---

[4] *Id.* at ¶ d.

[5] *Id.* at ¶ e.

[6] *Id.* at p. 4, ¶ 5.d.

[7] Record document number 70-3, p. 33, Exhibit C, Charlie Ball affidavit.

[8] Record document number 69-5, Exhibit C, John Sanders affidavit, p. 2, ¶ 4.

[9] *Id.*

7

single man cell and was observed only by Capt. Sanders, Lt. Stead and Cadet Robinson.[10]

Balancing the factors set out in *Bell v. Wolfish, supra*, and considering the Supreme Court's statement in *Block v. Rutherford, supra*, that administrative officials need not adopt the least restrictive means to meet their legitimate objectives, easily supports the only conclusion a jury could reach: the search of the plaintiff conducted on January 15, 2013 was not unreasonable. The scope of the particular intrusion was not excessive, and the search was conducted in relative privacy in the presence of only three male correctional officers. Therefore, the search did not violate the plaintiff's Fourth Amendment rights.

**D. Excessive Force - Applicable Law**

A prison official may be held liable under the Eighth Amendment for acting with deliberate indifference to an inmate's health or safety only if he knows that the inmate faces a substantial risk of serious harm and disregards that risk by failing to take reasonable steps to abate it. *Farmer v. Brennan*, 511 U.S. 825, 114 S.Ct. 1970 (1994). The official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must draw the

---

[10] *Id.* at 3; record document number 69-11, Exhibit I, Randall Stead affidavit, p. 2, ¶ 4; record document number 69-15, Exhibit M, Bryson Robinson affidavit, p. 2, ¶ 4; record document number 70-3, pp. 33-34, Exhibit C, Charlie Ball affidavit.

8

inference. *Id*.

Force is excessive and violates the Eighth Amendment only if applied maliciously and sadistically for the very purpose of causing harm, rather than a good faith effort to maintain or restore discipline. *Hudson v. McMillian*, *supra*; *Whitley v. Albers*, *supra*. A necessary element of the excessive force claim is the proof of injury resulting from the use of force. *Knight v. Caldwell*, 970 F.2d 1430, 1432 (5th Cir. 1992), *cert. denied*, 507 U.S. 926, 113 S.Ct. 1298 (1993).

There is conceptual distinction between the *de minimis* injury and a *de minimis* use of force. *Wilkins v. Gaddy*, 559 U.S. 34, 38, 130 S.Ct. 1175, 1178 (2010) (per curiam) ("Injury and force, however, are only imperfectly correlated, and it is the latter that ultimately counts."). To prevail on an Eighth Amendment excessive force claim, the plaintiff must establish that force was not "applied in a good-faith effort to maintain or restore discipline, [but] maliciously and sadistically to cause harm," and that he suffered an injury. *Eason v. Holt*, 73 F.3d 600, 601-02 (5th Cir. 1996). The Eighth Amendment's prohibition of cruel and unusual punishment excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort "repugnant to the conscience of mankind." *Hudson*, 503 U.S. at 10, 112 S.Ct. at 1000. The absence of serious injury, while relevant to the inquiry, does not preclude relief. The Fifth Circuit Court

of Appeals has never directly held that injuries must reach beyond some arbitrary threshold to satisfy an Eight Amendment excessive force claim. *Brown v. Lippard*, 472 F.3d 384, 386 (5th Cir. 2006).

Moreover, the Supreme Court has made clear that the presence of even minor injuries do not relieve the defendants of liability for using excessive force. *See Wilkins*, 539 U.S. at 38, 130 S.Ct. at 1178-79 ("An inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury."). For Eighth Amendment purposes, evidence of the existence and extent of injuries are not dispositive. Instead, such information is considered in conjunction with the other *Hudson* factors to help determine whether the force used was excessive. *See Brown,* 472 F.3d at 386-87 ("In evaluating excessive force claims, courts may look to the seriousness of the injury to determine 'whether the use of force could plausibly have been thought necessary, or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur.'") (quoting *Whitley*, 475 U.S. 321, 106 S.Ct. 1085).

**E. Excessive Force - Analysis**

Plaintiff alleged that he complied with an order to remove his clothing for a strip search. Plaintiff alleged that after he

removed his clothing he was instructed to spread his buttocks for a visual body cavity search.  Plaintiff alleged that instead of complying with the order, he responded to Capt. Sanders with an expletive, "f___ you."  Plaintiff alleged that Capt. Sanders retrieved a can of mace, stuck the can of mace through the cell bars and ordered the plaintiff to come to the cell bars.  Plaintiff alleged that when he came to the cell bars Capt. Sanders sprayed him twice with mace and then went into the pipe chase and sprayed mace through the vent.

Plaintiff alleged that approximately 15 minutes later he was restrained and removed from his cell.  Plaintiff alleged that while being escorted to administrative segregation Capt. Sanders and Lt. Stead punched and slapped his back, head, neck and stomach. Plaintiff alleged that Msgt. Normand, Lt. Stead and Cadet Robinson observed Capt. Sanders spray him with mace without provocation and did nothing to intervene on his behalf.

Defendants offered a different version of the incident. Defendants contend that on the day of the incident the plaintiff refused to comply with orders to spread his buttocks for a visual body cavity search.[11]  Defendants contend that Capt. Sanders retrieved a can of Phantom® chemical agent and gave the plaintiff

---

[11] Record document numbers 69-5, Exhibit C, John Sanders affidavit, p. 3, ¶ 4; record document number 69-11, Randall Stead affidavit, p. 2, ¶ 4; record document number 69-15, Exhibit M, Bryson Robinson affidavit, p. 2, ¶ 4.

several more orders to bend over and spread his buttocks. Defendants contend that when the plaintiff refused to comply Capt. Sanders administered a one second burst of the chemical agent into the plaintiff's cell. Defendants contend that the plaintiff then complied by submitting to a visual body cavity search.

Defendants contend that the plaintiff was removed from his cell and escorted to administrative segregation where he was allowed to shower, was provided a clean jumpsuit and was examined by medical personnel.

Capt. Sanders and Lt. Stead deny that they punched or kicked the plaintiff.[12] Cadet Robinson denied that he witnessed Capt. Sanders or Lt. Stead abuse the plaintiff.[13]

Defendants argued that because there is no objective medical evidence to support a finding that the plaintiff sustained more than a *de minimis* injury as a result of the alleged use of force, they are entitled to summary judgment as a matter of law.

Plaintiff's medical records showed that on January 15, 2013, the plaintiff was examined by medical personnel after the use of force.[14] Plaintiff complained of headache, neck and back pain,

---

[12] Record document number 69-5, Exhibit C, John Sanders affidavit, p. 4, ¶ 4, and record document number 69-11, Exhibit I, Randall Stead affidavit, p. 3, ¶ 4, respectively.

[13] Record document number 69-15, Exhibit M, Bryson Robinson affidavit, p. 3, ¶ 4.

[14] Record document number 69-22, Exhibit T, p. 3.

shortness of breath and ankle abrasions from restraints.[15]  Physical examination showed bilateral chest breath sounds clear to auscultation, no deformity to head, no lacerations, no jugular vein distention, no trachea deviation, full range of motion, no signs of injury.[16]  Posterior examination showed no mass, no spasms, full range of motion, no signs of injury.[17]  Two abrasions were noted to the right and left posterior ankles with no active bleeding or edema.[18]  Plaintiff was prescribed triple antibiotic ointment.[19]  Plaintiff sought medical treatment for complaints of upper back pain on May 17[20] and May 20, 2013.[21]

Defendants' argument that the plaintiff sustained only minor abrasions to his ankles is contradicted by the plaintiff's medical records.  But even if the medical records show that the plaintiff could prove only that he suffered back strain and minor abrasions to his ankles, this is not per se a *de minimis* injury.

There are also significant material facts in dispute regarding the remaining *Hudson* factors, i.e., need for the application of any

---

[15] *Id.*

[16] *Id.*

[17] *Id.*

[18] *Id.*

[19] *Id.*

[20] *Id.* at 7.

[21] *Id.* at 9.

force at all, the relationship between the need for and the use of force, the threat reasonably perceived by the prison officials, and efforts made to temper the severity of the response to the perceived need. See *Hudson*, 503 U.S. at 6-7, 112 S.Ct. at 998-999. Resolution of these disputed factual issues will turn on the credibility of the witnesses and weighing of the evidence. When ruling on a motion for summary judgment, the court cannot make credibility determinations nor weigh the evidence.

## RECOMMENDATION

It is the recommendation of the magistrate judge that the the Defense Motion for Summary Judgment be granted in part, dismissing the plaintiff's claim that he was searched without probable cause in violation of the Fourth Amendment. It is further recommended that in all other respects the Defense Motion for Summary Judgment be denied and this matter be referred back to the magistrate judge for further proceedings on the plaintiff's excessive use of force claim.

Baton Rouge, Louisiana, June 2, 2014.

_____
STEPHEN C. RIEDLINGER
UNITED STATES MAGISTRATE JUDGE